IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PRONATIONAL INSURANCE CO.** | : | |
| | : | |
| v. | : | Civ. Action No. 07-1774 |
| | : | |
| **CHADRAKANT C. SHAH, M.D., et al.** | : | |
| | : | |

_____

**Diamond, J.**                                                                                      **September 17, 2007**

# MEMORANDUM

**I.      INTRODUCTION**

Plaintiff, ProNational Insurance Company, asks me to determine whether it is obligated to defend and indemnify its insured, Defendant Chadrakant C. Shah, M.D., in a state court malpractice action that is about to go to trial. Defendants have moved to dismiss on various grounds. I will stay the instant matter pending completion of the state court trial and deny the motions to dismiss without prejudice.

**II.     PROCEDURAL HISTORY**

Marshal Grim, a patient of Dr. Shah, died on April 19, 2003 of a heart attack. On June 29, 2004, Jean Grim, as Administratrix of her husband's estate, filed a malpractice action in the Berks County Common Pleas Court against Dr. Shah and his employers. <u>Grim v. Shah, et al.</u>, No. 04-17197 (Berks County Ct. of Common Pleas). <u>See also</u>, (Doc. No. 17 at 3). Dr. Shah notified his insurer, ProNational, of the suit, and sought a defense under his renewed policy. (Doc. No. 19 at 6). Although Plaintiff provided a defense to Dr. Shah (with a reservation of rights), it now alleges, <u>inter alia</u>, that it recently learned of fraudulent conduct by Dr. Shah that voids the insurance policy. (Doc. 14). Accordingly, on May 2, 2007 -- the same day the Grim

malpractice suit was certified as trial-ready -- ProNational filed the instant action, urging me to declare that it has no duty to defend or indemnify Dr. Shah.  (Doc. No. 19 at 9).

On May 29, 2007, Defendant Grim moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (Doc. No. 3).  On June 5, 2007, Defendants Shah, Mertztown Community Medical Center, and Boyertown Family Medicine ( collectively "Dr. Shah") -- all of whom are Defendants in the underlying malpractice action -- also moved to dismiss.  (Doc. Nos. 8-9).

On June 27, 2007, Plaintiff filed an Amended Complaint, which Defendants have again moved to dismiss.  On August 23, 2007, I heard oral argument on the Motions to Dismiss.

### III.     LEGAL STANDARDS

Rule 12(b)(1) authorizes the court to dismiss for lack of subject matter jurisdiction.  A party may raise such a challenge in one of two ways: (1) a facial challenge to the jurisdictional allegations in the complaint, or (2) a factual attack on the jurisdictional allegations in the complaint.  See Mortensen v. First Fed. Sav. & Loan Ass'n., 549 F.2d 884, 891 (3d Cir. 1977).  With a factual challenge, there is no "presumptive truthfulness" as to the plaintiff's allegations, and the existence of disputed facts does not prevent the court from evaluating the merits of the jurisdictional claims.  Id.  Rather, if necessary to resolve the factual disputes, the court must review and consider evidence outside the pleadings.  See Gould Elecs., Inc. V. United States, 220 F.3d 169, 176 (3d Cir. 2000). The burden of proof remains on the plaintiff, however, to establish jurisdiction. See e.g., Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007).

Rule 12(b)(6) provides for dismissal for failure to state a claim on which relief may be granted.  In deciding a Rule 12(b)(6) motion, I must accept as true the factual allegations in the

complaint. See Erickson v. Pardus, ___ U.S. ___, 127 S.Ct. 2197, 2200 (2007); In re Rockefeller Center Properties, Inc., 311 F.3d 198, 215 (3d Cir. 2002). "The inquiry is not whether plaintiffs will ultimately prevail on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." Rockefeller Center, 311 F.3d at 215. The plaintiff must allege facts sufficiently detailed to "raise a right to relief above the speculative level," and must "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct 1955, 1964-65, 1974; Hogue v. Palisades Collection, LLC, 2007 WL 1892938, at *2 (S.D. Iowa July 3, 2007) (Twombly standard applies to all cases, not just antitrust actions); Osakwe v. Dept. of Homeland Sec., 2007 WL 1886249, at *3 n.2 (S.D. Tex. June 29, 2007) (same).

**IV.   DISCUSSION**

Although Defendants urge me to dismiss on various grounds, I will discuss only one: whether I should decline to hear this matter.

The Declaratory Judgment Act provides as follows:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, ***may*** declare the rights and other legal relations of any interested party seeking such declaration . . . .

28 U.S.C. § 2201(a) (2007) (emphasis added). Under this provision, a district court is not obligated to hear a declaratory judgment action that otherwise satisfies jurisdictional requirements. See, e.g., Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995). The Third Circuit has cautioned however, that district courts do not have "open-ended discretion to decline

jurisdiction over a declaratory action when the issues include[] federal statutory interpretation, the government's choice of a federal forum, an issue of sovereign immunity, or inadequacy of the state proceedings." State Auto Ins. Cos. v. Summy, 234 F.3d 131, 134 (3d Cir. 2000) (citing United States v. Dep't of Envtl. Res., 923 F.2d 1071, 1075 (3d Cir. 1995)).

The Supreme Court has ruled that if none of these discretion-limiting factors apply, the district court should determine:

> whether the question in controversy between the parties to the federal suit . . . can better be settled in the proceedings pending in state court.' . . . Naturally, this requires some inquiry into the scope of the state court proceeding, the nature of the defenses available there, and whether the claims of all parties of interest can satisfactorily be adjudicated in that proceeding.

State Auto Ins. Cos. v. Summy, 234 F.3d 131, 133 (3d Cir. 2000) (citing Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 495 (1942)).

The Third Circuit has set out additional criteria respecting the district court's exercise of discretion:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in settlement of the uncertainty of the obligation; and (4) the availability and relative convenience of other remedies.

United States v. Dep't. of Envtl. Res., 923 F.2d 1071, 1075 (3d Cir. 1991).

In cases involving questions of insurance coverage, the Third Circuit has offered three additional considerations:

> (1) A general policy of restraint when the same issues are pending in state court; (2) An inherent conflict of interest between an insurer's duty to defend in state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion; (3) Avoidance of duplicative litigation.

See Summy, 234 F.3d at 134.

Finally, the Summy Court counseled against "exercising jurisdiction over declaratory judgment actions where the state law involved is close or unsettled." 234 F.3d at 135.  Rather, "district courts should give serious consideration to the fact that they do not establish state law, but are limited to predicting it.  This is especially important in insurance coverage cases. . . ." Id.

Applying these criteria to the instant case, I conclude that Defendants have raised serious questions as to the advisability of exercising federal jurisdiction.

### A.     Adequacy of the State Court Proceedings

Of the discretion-limiting Summy criteria, Plaintiff argues only that any state court proceedings would not adequately address the coverage questions it raises here.  I disagree.  In a closely analogous dispute, the Third Circuit rejected the argument Plaintiff makes here: "[E]ven if the coverage issue is not currently pending, it will as a matter of logic necessarily arise before the matter is concluded in state court [in garnishment proceedings]." Atlantic Mut. Ins. Co. v. Gula, 84 Fed. Appx. 173, 175 (3d Cir. 2003).  Under Pennsylvania law, "garnishment is a well-settled viable remedy available to a judgment creditor to collect on a judgment from the judgment debtor's insurer." Butterfield v. Giutoli, 670 A.2d 646, 651 (Pa. Super. Ct. 1995) (citations omitted).  "In general, the insurer can then assert any defense against the garnishor that it could assert against its insured." Id. (citations omitted).

At oral argument, Counsel for Defendants acknowledged that if ProNational refuses to indemnify Dr. Shah, a garnishment proceeding would certainly follow:

> **[Grim's counsel:]** Either the plaintiff [would name] Dr. Shah and
> Pronational because it is sitting on an asset of Dr. Shah's, this insurance

> policy.  Or it gives Dr. Shah a relief and brings [an action] in both their names against Pronational.  But one way or another, there will be a garnishment proceeding[].
>
> ****
>
> **[Shah's counsel:]** [I]t would be Dr. Shah's intent to assign the claim that he would have against his insurers, to the plaintiffs. . . . And then, the plaintiffs would pursue . . . the claim in the context of a garnishment action against Pronational.

(Oral Argument Tr. 9:23-10:4, 6:25-7:8, Aug. 23, 2007 ("Oral Arg. Tr.")).  See also (Doc. No. 17 at 14-15).

Plaintiff counters that: 1) waiting for a garnishment action will unfairly delay a determination of ProNational's obligations; and 2) a garnishment action might not be broad enough to address the issues presented in the instant action.  (Oral Arg. Tr. 12:2-19, 57:17-21).  Neither contention is persuasive.  In a coverage dispute, the garnishment proceeding against the insurer invariably follows a merits judgment against the insured in the underlying proceeding.  If that delay were sufficient to require the federal courts to exercise jurisdiction over the insurers' claims for declaratory relief, no federal court could ever decline jurisdiction.  Moreover, the Gula Court emphasized that under Pennsylvania law, an insurer is entitled to raise the same coverage defenses in both declaratory judgment and garnishment proceedings.  84 Fed. Appx. at 175.

In these circumstances, I conclude that the state court proceedings available to ProNational are adequate.

> **B.     A General Policy of Restraint When the Same Issues Are Pending in State Court**

At least one very significant issue is likely to arise both in the instant case and in the Grim malpractice action.  ProNational seeks to disclaim coverage because it believes that after

Mr. Grim died, Dr. Shah altered Grim's medical records to suggest that Dr. Shah afforded his patient greater care than he in fact received.  In the pending malpractice action, Mrs. Grim also intends to argue that Dr. Shah altered Mr. Grim's records, and that this alteration confirms Dr. Shah's "guilty" state of mind.  (Doc. No. 17 at 20-22)**.**  Moreover, as Dr. Shah's counsel explained at oral argument, the question of whether Dr. Shah altered Mr. Grim's records closely relates to the question of whether Dr. Shah committed malpractice:

> **[Shah's counsel:]** No matter how you cut it, their case was, and still does, involve these overlapping factual issues and legal issues that have to be decided by the jury up in Berks County.  Whether it's the altered record issue as a stand alone issue or integrated into an overall fraud thing, the fact is that is – was and is still party of their case. . . . I don't know how your Honor can decide those issues in the context of this case without impacting the Berks County case.  But second, and with the issue of judicial economy, I don't know how we decide those cases without doing the entire malpractice case in the context of this case, because all of those issues are ultimately intertwined into – in the malpractice case.  And to give the parties give the parties here a fair hearing on their explanations, and all of the discussion by the office staff member of Dr. Shah, Dr. Shah, the arguments against it, all will come up in the malpractice case.
> 	But for your honor to decide those issues fairly, we're going to have to create the same record, so we're going to be basically forcing the trial of the malpractice case in the context of this case to decide one of those issues, which is, is there – you know, was there alteration?  Was it fraudulent?  Was it purposeful?  All of those questions will have to be decided.

(Oral Arg. Tr. 45:16-46:15).  <u>See also</u> (Doc. 17 at 20-22).

This is undoubtedly correct.  In both the federal and state actions, it will be necessary to determine whether Mr. Grim's medical records are accurate, or whether Dr. Shah altered them to include treatments Grim did not actually receive.  Thus, in deciding the instant case, I will necessarily determine the medical care Dr. Shah actually afforded Grim -- a determination could

well bind Dr. Shah in the malpractice action.  See Brown v. Nash, No. 07-2648, 2007 WL 2591194, at *2 (3d Cir. Sept. 10, 2007) (slip opinion) (per curiam) (setting out issue preclusion criteria).

In arguing that I would not necessarily have to address the altered records issue, ProNational ignores its own Complaint.  Plaintiff seeks either to rescind its insurance contract (Count I of its Complaint), or to be relieved of any coverage obligation because of Dr. Shah's alleged breach of the policy (Count II).  (Doc. No. 14).  Thus, Plaintiff alleges that Dr. Shah's alleged alteration of Mr. Grim's medical records was part of a pattern of fraudulent conduct by Dr. Shah warranting rescission.  (Doc. No. 14 at ¶¶ 57-60).  Plaintiff also alleges that the alteration constituted a breach of the insurance contract.  (Doc. No. 14 at ¶¶ 65-66, 68-78).  At oral argument, Plaintiff sought to minimize the alteration issue, arguing that I could somehow find that Dr. Shah altered the records without binding Dr. Shah in the malpractice action. (Oral Arg. Tr. 24:14-28:12).  This is absurd.  In ruling on Counts I or II, I will necessarily determine whether Dr. Shah fraudulently altered Mr. Grim's records.

In these circumstances, the likelihood of overlapping issues compels me to exercise "[a] general policy of restraint."  Summy, 234 F.3d at 134.

### C. Close or Unsettled State Law Questions

Among the defenses raised by Mrs. Grim is the "innocent third party doctrine."  She argues that Pennsylvania law does not allow Plaintiff to disclaim coverage because of Dr. Shah's allegedly wrongful acts if that would injure Mrs. Grim -- an "innocent third party."  Although Pennsylvania courts have addressed analogous questions, there is no reported holding that when a doctor defrauds his private malpractice carrier, Pennsylvania's "innocent third party doctrine"

precludes the insurer from disclaiming coverage. Compare Dellenbaugh v. Med. Prof'l Liab. Catastrophe Loss Fund, 562 Pa. 558 (Pa. 2000) (under the statutory scheme creating the CAT Fund, coverage can be denied to a doctor who has failed to pay insurance premiums) with Erie Ins. Exchange v. Lake, 543 Pa. 363 (Pa. 1996) (under the statutory scheme regulating automobile insurance, policies may be rescinded only within 60 days of their issuance).

The Summy Court cautioned against the exercise of jurisdiction over declaratory judgment actions -- especially those involving insurance coverage issues -- when the state law involved is close or unsettled. 234 F.3d at 135. That is exactly the case here.

### D. Other Criteria

Almost all the other applicable factors weigh against exercising federal jurisdiction. The coverage issues Plaintiff raises are exclusively questions of state law that state courts are better suited to address. See e.g., Summy, 234 F.3d at 136 ("When the state law is firmly established, there would seem to be even less reason for the parties to resort to the federal courts.").

There is no significant public interest in a federal court resolving the coverage question Plaintiff raises, nor is the this Court more convenient to the Parties than the Berks County Common Pleas Court.

As I indicated at oral argument, I am disturbed that ProNational chose to bring this lawsuit on the same day the underlying malpractice action was certified as trial-ready. Such suspect timing underscores the "inherent conflict of interest between an insurer's duty to defend in state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion." United States v. Dep't of Envtl. Res., 923 F.2d at 1075 (3d Cir. 1991).

Finally, although a decision by this Court will likely resolve the uncertainty of obligation

that gave rise to the instant action, that alone is insufficient to convince me to exercise jurisdiction.

V.      **CONCLUSION**

Almost all the factors articulated by the Supreme Court and the Third Circuit weigh against my exercising jurisdiction here. Plaintiff requests, however, in the event I am inclined to dismiss, that I instead stay the instant litigation to ensure ProNational a forum in which to have its coverage questions heard if the state court does not decide them. (Oral Arg. Tr. 63:17-64:8). Defendants do not object to the issuance of a stay. (Oral Arg. Tr. 65:16-16 7; 70:25-71:3). Accordingly, I will stay the instant litigation pending conclusion of the malpractice trial. At that time, I will consider the request of any party to lift the stay and proceed with the instant matter. Defendants may at that time renew their motions to dismiss.

An appropriate Order follows.

/s/ Paul S. Diamond

_____

**Paul S. Diamond, J.**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PRONATIONAL INSURANCE CO.** | : | |
| | : | |
| | : | **Civ. Action No. 07-1774** |
| v. | : | |
| | : | |
| **CHADRAKANT C. SHAH, M.D., et al.** | : | |
| | : | |

# ORDER

AND NOW, this 17th day of September, 2007, the Motions to Dismiss filed by Jean Grim (Doc. No. 3) and by Dr. Shah (Doc. No. 8), the Brief in Support of Dr. Shah's Motion to Dismiss (Doc. No. 9), and ProNational's Response Motions (Doc. Nos. 10-13) are **DENIED** as **Moot**. In consideration of Defendants' Motions to Dismiss The Amended Civil Action Complaint (Doc. Nos. 17-19), and the Plaintiff's Responses to the Defendants' Motions to Dismiss the Amended Complaint (Doc. Nos. 20-23), it is hereby ORDERED that those Motions are **DENIED WITHOUT PREJUDICE**. Furthermore, the instant action is **STAYED** pending conclusion of the trial in Grim v. Shah et al., No. 04-17197 (Berks County Ct. of Common Pleas).

The Clerk's Office shall place this matter in suspense and shall close this matter for statistical purposes.

AND IT IS SO ORDERED.

/s/ Paul S. Diamond

_____

**Paul S. Diamond, J.**